

# NUMBER 13-16-00685-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LISA CRISP DICKINSON,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                           Appellee.

## On appeal from the County Court at Law No. 2
## of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Longoria and Hinojosa
### Memorandum Opinion by Chief Justice Valdez

Appellant Linda Crisp Dickinson was convicted of theft, a class B misdemeanor. Dickinson was sentenced to 180 days confinement with a $200 fine, but the sentence was suspended and she was placed on community supervision for one year. By one issue, Dickinson contends that the evidence is insufficient to support the conviction. We affirm.

## I.    BACKGROUND

In April 2015, the State charged Dickinson with the offense of theft of property, a class B misdemeanor, allegedly occurring on January 26, 2015 in Victoria County, Texas. The State alleged that Dickinson had unlawfully appropriated, by acquiring or otherwise exercising control over, a boom box from a local Walmart.

In 2017, a jury trial commenced. At trial, Christina Tate, a detective with the Victoria Police Department, testified that she viewed a video tape from Walmart recorded on January 26, 2015. When asked to describe what she observed, Detective Tate replied

> I observed [Dickinson] and her boyfriend, Mr. Burkhart, enter the store at 16:13. They separated. Mr. Burkhart went and selected an item from the shelf. It was a yellow fishing T-shirt. He took it to the electronics section and dropped it off at 16:42 hours. [Dickinson] picked it up, put it in the basket and walked off with it. The video kind of cuts off there.

> The next thing I see is [Dickinson] at the deli section, ordering food there. Nineteen minutes later, [Dickinson] exits, without purchasing anything, and that's when she's apprehended by Mr. Rubio and she's taken into loss prevention office, where she empties out her purse.

Detective Tate testified that Dickinson had the following items in her purse: "food she got from the deli"; "the yellow shirt"; chicken tenders; Heinz buffalo dipping sauce; sweet tea; some Valentine decorations; and a boom box. On cross-examination by Dickinson's trial counsel, Detective Tate stated that the total value of the property allegedly stolen by Dickinson was $118.00. On redirect examination by the State, Detective Tate clarified that the value of the boom box was $100.00.[1]

---

[1] At the time that the offense allegedly occurred, an offense of theft constituted a Class B misdemeanor if the value of the property stolen was more than $50.00 but less than $500.00. Acts of June 20, 2003, 78th Leg. R.S., ch. 393 § 20, 2003 TEX. GEN. LAWS 1639, eff. Sept. 1, 2003 (amended 2015) (current version at TEX. PENAL CODE ANN. § 31.03(e)(2)(A) (West, Westlaw through Ch. 49 2017 R.S.)). In 2015, the legislature amended the statute making theft of property a Class B misdemeanor if the value of the property is $100.00 or more but less than $750.00. *See* TEX. PENAL CODE ANN. § 31.03(e)(2)(A).

Thomas Rubio, a former Walmart loss prevention specialist, testified that he observed on January 26, 2015 the following:

> [Dickinson's] body language was out of the ordinary. She was in an area of people that stood out. She was moving around constantly. She was very—I'm trying to put this in simplistic terms so you guys can understand. She was moving around a lot, very indecisive with what she was doing. She was very antsy with her purse—She was very protective of it. In a sense that's what, initially, drew my attention to her in the area.

The State prosecutor then played the video for the jury while Rubio stated on the record his observations. Rubio stated that Dickinson walked into the Walmart with John Burkhart, and Dickinson "came in empty handed." Rubio testified that Dickinson walked around the store with Burkhart. At some point the pair separated, and Burkhart is shown "selecting two shirts that were recovered during the theft, that [were] in [Dickinson's] possession." According to Rubio, the video shows Burkhart in the electronics department "staging [the two shirts] in an area where [Dickinson] will walk down the aisle and recover them, so forth and so on." Rubio testified that [Dickinson] came "down the aisle and pick[ed] up the items left by [Burkhart]." Rubio described that the video showed Dickinson passing all points of sale and Rubio flagging her down and escorting her to the loss prevention department of the store. Rubio stated that the video shows the two enter the office where he told her that he wanted to recover the property and that she was being stopped for theft. Dickinson removed all items from her purse, another employee took the items to calculate the value, and then printed a receipt. According to Rubio, Dickinson denied stealing the boom box, which was not contained in a box, and claimed she had brought it into the store in her purse. Rubio explained that "[b]asically, what the [electronics] department did was place a price on the bottom of the boom box and place it on the shelf [without a box]."

3

On cross-examination by Dickinson's trial counsel, Rubio testified the police officer who assisted with the case charged Dickinson with a Class C misdemeanor because the officer did not include the value of the boom box at that time. Rubio stated that based on further investigation however, the charge against Dickinson was upgraded to a Class B misdemeanor based on the value of the boom box. On redirect examination by the State, Rubio clarified that, after reviewing the video, he later determined that the boom box was Walmart's property, that it had been stolen, and that the total value of the products stolen was $118.89. Rubio also stated that he wrote in his report, "Upon further review of CCT footage, it was revealed that another white male was identified that selected a boom box that was taken and concealed by [Dickinson] . . . . Making the grand total of the offense to $118.89."[2] On cross-examination by Dickinson's trial counsel, when asked what happened to the boom box, Rubio responded, "At the time the boom box was recovered, it is taken to the back end of our facility, which is called—I forget the acronym for it. Basically, they take all the damaged—or property reported as stolen and returned and get credit for it."

Lee Peters, the arresting police officer in this case, testified that when he arrived at the loss prevention office, there were several items that were valued at around $19.00 on a table. Officer Peters stated, "There was another item in question that Walmart had brought up and said that property was possibly theirs, but they weren't sure of it at the

---

[2] Rubio testified that the portion of the video wherein Dickinson took the boom box that he reviewed during his investigation was no longer available. Regarding why the video was not available, Rubio stated on direct examination by the State, "As I stated before, there are—Part of our job is to make these videos as accurate as possible. Being that it is a computer system, there are faults on that. . . . In this case, it was added, but not to the copy that the State has or that investigations was given." On cross-examination by Dickinson's trial counsel, when asked about the video, Rubio said, "As I explained before, there are mishaps with that. I went back to find it and it could not be found, even in rendition with Walmart's statements as well."

time.  The defendant [Dickinson] claimed she had brought it into the store or it was [hers] she intended to pawn it at a later time.  With that being said, that property was valued at 99 dollars and some change, if it was stolen."[3]  At that point, because Walmart could not actually prove the property belonged to Walmart and Dickinson claimed it was hers, Officer Peters issued a citation for a Class C misdemeanor for the property valued at approximately $19.00.  Officer Peters released Dickinson, and he "gathered a receipt from Walmart and went to the parking lot, to begin typing [his] paperwork."  Officer Peters stated that he then received a phone call from Rubio advising that "they had reviewed further video footage and the boom box, I believe, it was Walmart property, increasing the value from a Class C to a Class B misdemeanor. . . ."

Dickinson testified that that she did not take the boom box from Walmart as it was a birthday present from her grandmother.  On cross-examination by the State, Dickinson stated that after the incident at Walmart she took the boom box with her and pawned it.  When asked if Rubio had lied when he testified that Walmart kept all of the items including the boom box, Dickinson replied, "I walked out of the store with my boom box.  It shouldn't stay.  It was mine."  Dickinson acknowledged that she placed a yellow shirt in her purse after Burkhart placed it in the electronics department and that she had not paid for that item.  However, she insisted that she did not take the boom box.

## II.  STANDARD OF REVIEW

In a sufficiency review, we examine the evidence in the light most favorable to the prosecution to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307,

---

[3] The trial court admitted a Walmart receipt showing that the value of the boom box was $100.00.

319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and of the weight to be given testimony. *Brooks*, 323 S.W.3d at 899. We must resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

### III.  DISCUSSION

By her sole issue, Dickinson contends that the evidence is insufficient to support her conviction of theft. Dickinson does not challenge a specific element of theft. *See* TEX. PENAL CODE ANN. § 31.03. Instead, she appears to argue that because she testified that the boom box was a gift from her grandmother, the evidence is insufficient. The State responds that Rubio testified that the boom box belonged to Walmart and that Dickinson stole it; thus, the issue was one of credibility for the jury to determine.

We agree with the State. It is well established that the fact-finder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Therefore, the jury in this case was free to believe Rubio and disbelieve Dickinson. *See id.* Accordingly, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *see also* TEX. PENAL CODE ANN. § 31.03 (setting out the elements of theft); *Brooks*, 323 S.W.3d at 902–03. We overrule Dickinson's sole issue.

### IV.  CONCLUSION

We affirm the trial court's judgment.

6

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed this
27th day of July, 2017.